OPINION.
Davis, J.,
delivered the opinion of the court:
On the 18th of June, 1878, Congress enacted—
That hereafter in the examination of officers in the Navy for promotion, no fact which occurred prior to the last examination of the candidate whereby he was promoted, which has been inquired into and decided upon shall be again in quited into. * * * Section 2. The President of the Uni *609 ted States may, in cases wherein tlie rule herein prescribed has been violated, order and direct tlie re-examination of tlie, same. (Oh. 267, 20 Stat. Ij., 105, and Supplement to Rev. Stat., 367.)
Tbe claimant’s intestate, who bad been placed on tbe retired list of tlie Navy in 1S73, witb tbe rank of captain, on account of failure to obtain recommendation for promotion, applied for an order under this act directing a re-examination into bis case.
Tbe President, by tbe Secretary of tbe Navy, decided tbat tbe case came witliin tbe provisions of tbe act, and ordered a re-examination. Tbat re-examination was bad, and resulted in tbe following order:
Tlie Board * * * after mature deliberation of all the evidence in the case, hereto annexed and marked as aforesaid, and the professional examination herein stated, find that Oaxitain' Thompson lias the mental, moral, and professional qualifications to perforin the duties of a commodore in the United States Navy on the active list to the satisfaction of said Board; and therefore—
We hereby certify that Cai«¡tain Egbert Thompson, U. 'S. Navy, has the mental, moral, and professional qualifications to perform efficiently all the duties, both at sea and on shore, of the grade to which he is to he promoted, and recommend him for promotion.
This finding and recommendation were approved by tbe President. Tbe petition states tbe claimant’s contention respecting tbe effect of these proceedings in tbe following language :
Your petitioner claims that the action of the President under the act of June 18, 1878, in ordering him before the last-named Board, and tlie action of said Board and the approval thereof by the President, completely abrogated and set aside the action of the Board convened in November, 1873, and of1 the President thereunder, in placing your petitioner on the retired list, and placed liim in full possession of the office of captain on the active list of the Navy on shore duty, and entitles him to the pay and allowances of that office, as fixed by law, from January 5, 1874, until the present time. * * k rjijjQ QiaXmaiyt; clemands judgment against the United States for the smn of $8,125.
As tbe proceedings referred to took place before tbe Eevised Statutes were enacted, we must turn to tbe acts wbicb were in force at that time in order to determine tbe legal status of tbe claimant when tbe Board of 1879 convened and acted.
Tbe class of “retired officers” was created by tbe “ Act providing for tbe better organization of tbe military establishment, ” •approved August 3,1861, cb. 42 (12 Stat. L., 287).
*610 Section 21 provided—
That any officer of the Navy who has been forty years in the service of the United States may, upon his own application to the President of the United States, he placed upon the list of retired officers of the Navy.
Section 22 provided—
That if any officer of the Navy shall have become, or shall hereafter he come, incapable of performing the duties of his office he shall be placed upon the retired list, and withdrawn from active service and command, and from the line of promotion.
The same section fixed a scale of pay and emoluments of all officers placed on the retired list. Section 23 made further provisions as to incapacity to perform service, and provided for courts of inquiry to ascertain the nature and occasion of the incapacitating disabilities referred to in both sections, and invested the court with the powers of courts-martial. Section 24 subjected retired officers to the rules governing the Navy and to trial by court-martial, and section 25 authorized the President to assign retired officers to such duties as he deems them cap'able of performing.
The 22d section further provided as to all officers thus placed on the retired list that the next officer in rank should be promoted to the vacant place, according to the established rule in the service, and that the same rule should be applied successively to the vacancies consequent upon the retirement of an officer. '
The Act of December 21, 1861 (12 Stat. L., 329), made additional provisions for retirement in consequence of age, and provided in the 6th section that promotions should be made in the place of all officers retired under its'provisions.
The acts above referred to assumed that there was to be a retired list in the Navy. The Act of July 16,1862 (12 Stat. L., 583), drew a sharp line between officers whose names were borne upon it and the other officers in the Navy. It divided the Navy into two classes, one of which it styled “the active list,” the other “the retired list.” It made no change in the latter, except as to officers receiving the thanks of Congress. The former it divided into nine grades, indicated the number of officers in each grade, and enacted that the number in each grade should not be exceeded. Subsequent statutes have changed the numbers of officers in some of the grades, but have not repealed the peremptory provisions that *611 tlie number in each grade fixed by law shall not.be exceeded; and that vacancies in any grade created by retirement shall be filled by promotion of the next officer iu rank, according to the established rule of the service.
The mode óf making all promotions, including those to positions made vacant by retirement, is fixed by the Act of April 21, 1861- (13 Stat. L., 53). No officer is to be promoted who does not successfully pass two examinations — one physical, the 'other professional. The act indicates with great precision the evidence upon which the Professional Board is to act. The officer under examination is to have the right to be present. He may make a statement on oath; He may be examined. Witnesses may be examined. All this is to be recorded. The Board then, on this evidence, and on,“any matter on the files and records of the Department touching each case as may in the opinion of the Board assist them in making up their opinion,” is to decide, and is to report its decision to the President, with all the evidence, whether original or taken from the files. The President-is then, with the whole case before him, to approve or disapprove the finding of the Board. If the finding of both Boards is favorable, the officer is to be promoted. If the finding of either Board is unfavorable, the provision in section 4 is peremptory that the officer shall be placed on the retired list. The statute leaves the President no discretion.
Under this act the claimant’s intestate was retired in 1874. All the steps taken in the proceedings appear to have been in order and warranted by the statute; although if t-hey^were not, this court would have mr power to review them. Captain Thompson passed the examination by the Board of Surgeons and failed to pass the professional examination. In the latter examination the Board had before them records from the files of the Department. In the files of the Department were papers in previous examinations of Captain Thompson, and among those papers were depositions or testimony unfavorable to him, and all the matter before the Board went before the President, and may have aided him in forming his judgment. The President approved the finding, and placed Captain Thompson on the retired list. Having approved the finding, he could not do otherwise than place him there. ' In obedience to the mandate of the statute he nominated to the Senate the ranking commander for promotion to the captaincy on the active list *612 thus made vacant; the Senate gave its constitutional assent thereto, and, upon his appointment, the new appointee from that moment became one of the fifty captains authorized by law to be on the “active list” of the Navy, and Captain Thompson became one of the captains authorized by law to be on the “retired list” of the Navy. (Blake's Case, 103 U. S. R., 227.)
Now we are in a position to consider the effect.of the Act of June 18, 1878, and of the decision of the President, that Captain Thompson’s case came within it, and of the action of the Naval Examining Board convened under that decision, and of the President’s approval of that action. We cannot accept the claimant’s views on this point, for reasons which will be briefly stated:
I. Assuming that Congress intended by the Act of 1878 to authorize executive action which should result in setting1 aside the legal effect of the proceedings of the Naval Board held in 1873 — ’7 i, and in restoring Captain Thompson to the active list of the Navy, it may be questionable whether the legislative branch of the Government had the constitutional power to do this. The Acts of 1861 and subsequent acts on the same subject, for reasons which this court had occasion to consider in its recent opinions delivered by the chief justice in Thornley’s Case (ante, 111), and by Judge Scofield in Brown’s Case (ante, 537), divided the Navy into two distinct classes, with distinct duties and distinct grades of pay. The retired list was to be filled from the active list, and an officer once placed upon it was off the active list and was not a subject for promotion. The higher grades on the active list were to be constantly supplied by streams of promotion from below, the fountain being at the lowest grade of all, and supplied from without. The practical construction put upon this statute by the Executive has-been that officers are placed upon each of these lists by the action of the President in conjunction with the Senate. Thus, in the present case, after the action of the Board of 1873 made it President Grant’s duty to place Captain Thompson on the retired list, he ordered him placed there and nominated to the Senate Commander Fillebrown “to be a captain from the 6th January, 1874, vice Capt. Egbert Thompson, retired.” The Senate advised and consented to the appointment of “ Commander Thomas S. Fillebrown to be a captain from the 6th January, 1874, vice Thompson, retired.”
*613 We do not mean to say that under the operation of the Act of 18G4 Thompson was not legally on the retired list when the Professional Board failed to concur with the Medical Board in recommending him for promotion. • Un this point we express no opinion. If the action of the Senate was unnecessary its assent to the filling of the vacancy did no harm. If, on the other hand, it was necessary, the necessary act was done. In either event it may be questioned whether the legislature could, without abolishing the office, constitutionally remove Captain Thompson from an office into which he had been legally inducted, and still more whether it could place him in another office without some constitutional action of the President. We need not decide these questions, because—
II. We are of opinion that Congress did not intend to give to the Act of 1878 the effect -which tiie claimant attributes to it.
The first section of that act is prospective, enacting that thereafter facts passed upon and settled by previous Boards are not to be again inquired into. The second section is retrospective — that the President may, in cases where the rule prescribed in the first section has been violated, order and direct a re-examination.
In the President alonéis reposed the power to determine the fact whether the rule has been violated in a previous case; and he having determined that it had been violated in Captain Thompson’s case, the fact is not open to question here. At the claimant’s request we have found some facts respecting the Boards of 1864 and 1867; but in our opinion they were not necessary to her case.
In order to maintain the claimant’s theory as to the effect of this Executive action, and of the Board, and of President Hayes’s approval, it is necessary to hold that Congress by implication repealed, by the force of the second section of the Act of 1878, so- much of the carefully considered laws regulating and limiting the force of the Navy as might be found to confiict with it..
There was no vacancy on the active list of captains when the Board made its finding. It will hardly be contended that Captain Fillebrown, who Avas legally and constitutionally in office, was put out of it by the finding of the Board in Captain Thompson’s case. Neither will it be contended, on the one hand, that Captain Thompson was put off the retired list by the finding, *614 and was to wait without pay until there should be a vacancy; or, on the other, that he was to remain on the retired list, drawing pay as a retired officer, until a vacancy should occur. If the Act of 1878, after the finding of the Board, operated to restore him to active service, he was restored at once; and the law limiting the force of the Navy was ipso facto repealed as to him, and as to all similar cases that might occur.
This construction is violent and improbable. It is more reasonable to assume that Congress intended to say to officers like the claimant: “If you can induce the President to order your cases re examined, and if the rehearing is favorable to you, you may then come to us with reasonable proof of an injury, and with good foundation for an' appeal to our sense of justice.” Congress intended by this general act to regulate appeals for special legislation on this subject. It intended to substitute a judicial inquiry in the department for investigations by its committees. It did not intend to repeal the laws limiting the force in the Navy; it did not intend in each case that might be favorably reported upon by the Examining Board to authorize restoration to active service without further legislation; it did not intend to indiscriminately set aside judgments of Boards of Examination, rendered upon evidence which the law as it then stood made it imperative for them to consider, solely because that evidence had been received; it did not intend to authorize the President to put back into active service in the Navy one whom his predecessor had, in obedience to law, put on the retired list, until Congress itself should consider the case and give him authority to right any wrong which they might find to have been committed.
This reasonable construction of the statute is fortified by facts set forth in the claimant’s petition. It is there averred that in March, 1878, a bill was introduced into the House of Eepresentatives to enact “That the President of the United States of America be, and he is hereby, authorized, by and with the advice and consent of the Senate, to transfer Captain Egbert Thompson from the retired list to his'original position on the active list of the Navy.” And that the Committee on Naval Affairs of the House of Eepresentatives, to whom that measure was referred, submitted as a substitute the general measure which was finally enacted as the Act of June 17, 1878.
The bill which the claimant asked Congress to pass proposed *615 to do two things: 1st, to set aside the findings which a quasi-judicial Examining Board had made upon evidence submitted to it in conformity with the requirements of the statute; 2d, to authorize the President to restore Captain Thompson to the active list of the Navy, and thus increase that list.
Congress, being evidently unwilling to disturb the result of a judicial inquiry by legislative action, relegated that duty by general law to another tribunal in the Navy Department, to be vested with powers similar to those of the former tribunals and to be convened at the discretion of the President. If it had intended also to grant to the Executive power to restore Captain Thompson, and other officers situated like him, to the active list, it would have said so. The absence from the act of a grant of such power, after Congress had been asked to bestow it, is conclusive proof that it did not intend to give it, but intended to retain the right to determine whether on the findings of the new tribunal, taken in connection with all other circumstances, it would be proper, in any particular case which might arise, to increase the active force of the Navy.
In our opinion the claimant’s only remedy is in Congress. Since this suit was commenced death has deprived Captain Thompson of the honors which increased rank might give; but there can be no doubt that this fact will not deter Congress from granting to those who survive him, and for whom as well as for himself he doubtless sought it, any pecuniary accompaniment of those honors to which they may, on examination, be fairly found entitled. '
The judgment of the court is that the claimant’s petition be dismissed.